# CIRCUIT COURT OF THE CITY OF NORFOLK

Avis Williams

v.

City of Norfolk

October 22, 2008

Case No. CL08-3971

BY JUDGE NORMAN A. THOMAS

This case came before the Court for argument on October 8, 2008, on the Petitioner's appeal from a grievance decision submitted by Regina V. K. Williams, City Manager of the City of Norfolk. The Petitioner, Ms. Avis Williams, was denied a hearing before a grievance panel regarding her termination of employment from the City of Norfolk. The Court has considered the record, the arguments, as well as the letters presented by counsel for both parties. The following will set forth the Court's ruling on the Petitioner's appeal.

*Background*

A. *Facts of the Case*

Ms. Avis Williams has been employed with the Department of Recreation, Parks, and Open Space for the City of Norfolk since December 1, 1989. On April 8, 2003, Ms. Williams was promoted to the permanent full time position of Recreation Specialist and, on July 17, 2006, to the permanent full time position of Senior Recreation Supervisor II. (Inter Department Correspondence dated 11-29-07, p. 1.)

On March 13, 2007, Ms. Williams was granted extended leave under the Family Medical Leave Act (FMLA) due to a death in her family. Ms. Williams later became ill and exhausted her FMLA leave. Subsequently, Ms. Williams was approved for Sick Leave Bank benefits. On August 13, 2007, Ms. Williams submitted a Special Request/Notification for leave for the period of August 3, 2007, through October 1, 2007. This request was disapproved on September 27, 2007, and Ms. Williams was referred to NowCare for a medical evaluation. (City of Norfolk letter dated 10-27-2007.) Ms. Williams' Sick Leave Bank was discontinued once her request for an additional leave of absence was disapproved. (Inter Department Correspondence dated 11-29-07, p. 2.)

On October 3, 2007, Dr. John Shaugnessy, with NowCare Medical Center, reported that Ms. Williams was medically qualified to return to work with restrictions on October 4, 2007. *Id.* Prior to this medical evaluation, Dr. Michael H. Sperling, Ms. Williams' specialist, reported on October 1, 2007, that Ms. Williams should not report to work until December 1, 2007. (Dr. Sperling's note dated 10-1-2007.) On October 15, 2007, Dr. Bernice Francis concurred with Dr. Michael H. Sperling and stated Ms. Williams was not fit for work. (Dr. Francis' note dated 10-15-2007.)

On November 16, 2007, Hartford Life denied Ms. Williams' long term disability benefits based on receiving clarification from two of Ms. Williams' physicians that she was able to return to work. (Inter Department Correspondence dated 11-29-07, p. 8.) An e-mail from Diane Fitzgerald, Employee Benefits Specialist for the City of Norfolk, on 11-29-07 stated, "I received notification from Hartford on 11-16-07 that Ms. Williams' claim had been denied. In speaking with Paige Cressman, Hartford's Disability Analyst, she stated that the denial was based on receiving clarification from two of Ms. Williams' Physicians, stating that she could perform her job duties and return back to work." However, the record reflects that Dr. Shaugnessy is the only doctor who concluded that Ms. Williams was fit to return to work.

According to the City of Norfolk, Ms. Williams was to report to work on October 4, 2007, based upon the outcome of Dr. Shaugnessy's medical evaluation. However, Ms. Williams did not report to work that day and did not have any contact with her supervisor until October 15, 2007.

The City of Norfolk's written policy states that after, five days of unauthorized absence, grounds for termination exist. On October 4, 2007, Ms. Williams was sent a letter by Darrel R. Crittendon on behalf of the City of Norfolk stating that, because Ms. Williams had failed to return to work on October 4, 2007, and did not inform her supervisor that she would not return

to work, the City of Norfolk had suspended her employment and was recommending Ms. Williams employment be terminated. On November 29, 2007, an investigative hearing was conducted to consider the City's recommendation to terminate Ms. Williams' employment. Ms. Williams was recommended for employment termination based upon her absence without authorized leave or without notification of reason to any superior. (Inter Department Correspondence dated 11-29-07, p. 1.)

On January 2, 2008, Ms. Williams was notified via letter that her employment with the City of Norfolk was terminated. In this letter, Ms. Williams was informed that she had a right to file a grievance concerning the termination within twenty days.

## B. *Procedural History*

Ms. Williams filed a grievance within the twenty day time allotment. On January 23, 2008, Ms. Williams was informed by Nancy N. Olivo, Human Resources Director, on behalf of the City that the settlement desired or specific corrective action desired was unclear. Ms. Williams was provided additional time to amend her grievance and provide the "resolution" she desired.

On January 30, 2008, Ms. Williams re-submitted her grievance complaint with a "proposed settlement" attached. She stated, "I propose to receive back pay from October 3, 2007, to present; I propose to have all of my medical benefits reinstated, thereby paying my outstanding medical bills; I propose to be allowed to retire from my position, effective on a date agreeable to all parties; finally, I propose that the City compensate me for the pain, suffering, and emotional distress I have incurred in an amount as yet undetermined." On February 6, 2008, Ms. Williams was informed via letter from Nancy Olivo that her January 30, 2008, settlement failed to identify any grievable issue under the City's grievance procedure. A grievance procedure manual was attached. Again, the City allowed Ms. Williams until February 15, 2008, to amend her complaint.

On February 25, 2008, Ms. Williams' attorney, Ms. Manning, responded to the City of Norfolk. On behalf of Ms. Williams, Ms. Manning wrote to Nancy Olivo, stating Ms. Williams believed the City had inconsistently applied Sick Leave Bank eligibility to her situation and that she was terminated in part as a retaliatory measure for filing a grievance. Additionally, Ms. Williams contended she had a grievable issue based on the request of Mr. Carl Painter, her supervisor, to report to work on March 13, 2007, so that he could prepare her evaluation while she was on medical leave.

Also, at the hearing on November 16, 2007, Ms. Williams had been informed she would receive a decision within ten days. Ms. Williams did not receive a decision terminating her employment until January 7, 2008, and stated that she sought to grieve that outcome.

On May 30, 2008, the Norfolk City Manager, Regina V. K. Williams, responded to Ms. Williams' alleged listing of grievable issues. The City Manager concluded that Ms. Williams had stated a grievable issue if Ms. Williams was denied Sick Leave Bank benefits in a manner constituting inconsistent administration of city policy. Also, the City Manager stated Ms. Williams potentially presented a grievable issue concerning wrongful denial of health care benefits after she was placed on indefinite suspension pending termination on October 4, 2007.

Further, according to the City Manager's letter, Ms. Williams' complaint that her supervisor requested she return to work during the period of her medical leave was *de minimis* and did not rise to the level of a grievable issue. The letter also stated the retaliation claim fails to state a grievable issue, because Ms. Williams did not file a grievance until after she received notice of her termination. Therefore, Ms. Williams' termination could not be based on retaliation for her filing a grievance.

Although the City conceded that Ms. Williams stated two grievable issues, the City Manager determined Ms. Williams' grievances and settlement proposal did not comply with the stated statutory purpose of the grievance procedure:

> The grievant requests she receive back pay from October 3, 2007, to the present; that she be allowed to retire from employment with the City; and that she be compensated for pain, suffering, and emotional distress. However, she does not claim wrongful termination, and, more importantly, she does not request reinstatement to her position. A grievance panel has no power to order that an employee receive compensation or any benefit for which that employee is not eligible. Finally, a grievance panel has no authority to provide the compensatory damages that the grievant seeks; its authority is simply limited to the affirmation or reversal of employment actions taken by the City. . . . The stated statutory purpose of local government grievance procedures is the "resolution of disputes" and the obvious statutory contemplation that the mandated grievance procedures therefore be capable of actually resolving disputes. See Virginia Code Sec. 15.2-1606. The City's Procedure itself

expressly states that its purpose is the resolution of grievances. If consequently, a grievance panel would have no authority to grant any of the remedies by a grievant, the complaint is therefore not capable of "resolution" by the panel and is accordingly not grievable.

(Determination of Grievability dated 5-30-08, p. 1.)

Therefore, Ms. Williams' grievance was denied for failure to state a dispute and appropriate settlement. Ms. Williams exercised her right to appeal this decision to the Norfolk Circuit Court.

## C. *Applicable Law*

### 1. *Virginia Code*

The definition of a grievance is defined in the Virginia Code § 15.2-1507, in relevant part, "[a] grievance shall be a complaint or dispute by an employee relating to his employment, including but not necessarily limited to (i) disciplinary actions, including dismissals . . . provided that dismissals shall be grievable whenever resulting from formal discipline or unsatisfactory job performance . . . and (iv) acts of retaliation as the result of the use of or participation in the grievance procedure."

### 2. *Grievance Procedure*

The Norfolk City Grievance Procedure defines grievable issues under § 8.4. The applicable sub-section (B)(1) states "[t]his procedure may be utilized for the presentation of grievances concerning . . . (b) Disciplinary actions, including . . . dismissals, provided dismissals shall be grievable whenever resulting from formal discipline or unsatisfactory job performance . . . (c) The violation or inconsistent application of any personnel practice, policy, or procedure with respect to a particular employee . . . (e) Acts of retaliation taken as a result of utilization of the grievance procedure, or of the participation in the grievance of another City employee."

The authority of the panel is defined in (I)(2) of the Norfolk City's Grievance Procedure. It states, "[a] panel by a majority vote may uphold or reverse the action of the City or, in appropriate circumstances, may choose a modified remedy."

### 3. *Virginia Case Law*

In *Jones v. Carter*, the Virginia Supreme Court, when evaluating a grievance panel decision stated "[an] examination of the City's and the Commonwealth's grievance procedure provisions reveals no mention of a panel's remedial powers. Only the Department's Rules for the Conduct of Panel Hearings address the specific remedial powers of a grievance panel, and then only in terms of the power to determine an employee's entitlement to reinstatement and back pay." 234 Va. 621, 625 (1988). The Court also described conduct of panel hearings. In relevant part, the Court stated, "[p]ursuant to its statutory authority . . . [p]anels do not have the authority to formulate or to change policies or procedures; however, they may consider mitigating circumstances and modify agency action concerning discipline . . . [w]hile, in appropriate cases, a panel might determine that a grievant is entitled to reinstatement, from which back pay and a restoration of benefits might flow, in no case does a panel have authority to award damages or attorney's fees." *Id.*

### *Standard of Review*

As stated in the Virginia Code § 15.2-1507(9):

> within thirty days of receipt of such records by the clerk, the court, sitting without a jury, shall hear the appeal on the record transmitted by the chief administrative officer or his designee and such additional evidence as may be necessary to resolve any controversy as to the correctness of the record. The court, in its discretion, may receive such other evidence as the ends of justice require. The court may affirm the decision of the chief administrative officer or his designee, or may reverse or modify the decision. The decision of the court shall be rendered no later than the fifteenth day from the date of the conclusion to the hearing. The decision of the court is final and is not appealable.

*Analysis*

A. *Grievable Issue*

1. *Grievable Issues*

a. *Inconsistency of Sick Leave Bank*

Section 8.4(B)(1)(c) of the Norfolk City's Grievance Procedure states the grievance procedure is applicable to any "inconsistent application of any personnel practice, policy, or procedure with respect to a particular employee." Ms. Williams stated she believes that her Sick Leave Bank benefits were applied inconsistently. (Employee Grievance dated 2-25-08, p. 1.) At a hearing before this Court on October 8, 2008, (hereinafter "hearing") Ms. Williams clarified through counsel her position that she was still entitled to 120 hours of Sick Leave Bank time. Ms. Williams contends she was denied the 120 hours of Sick Leave Bank benefits and states the City of Norfolk did not provide an accounting of her Sick Leave Bank time. (Employee Grievance dated 2-25-08, p. 1.)

The City effectively concedes that the inconsistent application of Sick Leave Bank benefits are a grievable issue according to the Norfolk City's Grievance Procedure. (Determination of Grievability dated 5-30-08, p. 1.) The Court finds that Ms. Williams' claim that she was a victim of inconsistent application of Sick Leave Bank benefits is a grievable issue under the Norfolk City's Grievance Procedure.

b. *Wrongful Denial of Health Care Benefits*

Ms. Williams, at the hearing, indicated that her health care benefits were terminated because her Sick Leave Bank time was denied. Ms. Williams requested at the hearing that she receive a restoration of the benefits she was allegedly wrongfully denied. The Court finds that Ms. Williams' claim would fall under § 8.4(B)(1)(c), "inconsistent application of any personnel practice, policy, procedure." Therefore, Ms. Williams has stated a second grievable issue.

c. *Retaliation*

Ms. Williams asserts that she has been a victim of retaliation (Manning letter, Feb. 25, 2008). At the hearing, Ms. Williams stated she believed the entire process of her trying to obtain Sick Leave benefits, disability, and filing

of a grievance led to her being terminated partly as a retaliatory measure. This claim is grievable according to § 8.4(B)(1)(e) of the Norfolk City's Grievance Policy and § 15.2-1507 (iv) of the Virginia Code which both state that actions of retaliation are grievable.

The City argues that Ms. Williams' claim that she is a victim of retaliation is not viable. (Determination of Grievability dated 5-30-08, p. 2.) The Court finds that the grievance panel has jurisdiction to determine the factual validity of grievable issues. Therefore, Ms. Williams has stated a third grievable issue.

### 2. *Non-Grievable Issues*

#### a. *Report to Work While on Leave*

Ms. Williams states she has a grievable issue because her employer requested that she report to work during the period of her medical leave in order for her employer to prepare an employee evaluation. (Employee Grievance dated 2-25-08, p. 1.) The Court finds this is not a grievable issue because Ms. Williams was not required to report to work, nor was she penalized for not doing so.

#### b. *Late Termination Decision*

Ms. Williams' termination hearing was held on November 16, 2007, and Ms. Williams was told she would receive a decision within ten days. Ms. Williams states she has a grievable issue because she was not informed of a decision until January 7, 2008. *Id.*, at 2.

The Court finds that Ms. Williams' late termination decision is not a grievable issue according to the Norfolk City Grievance Procedure and Virginia law. This is due to the fact that Ms. Williams was placed on indefinite suspension on October 4, 2007. The investigative hearing was held on November 16, 2007, and notification of termination was sent on January 2, 2007. Ms. Williams' harm, if any, did not rise to the level of a grievable issue, as the time frame of the decision making resulted in no new detriment to her.

### B. *Vagueness of Settlement Desired*

The "settlement proposal" sent on January 30, 2008, as prepared by Ms. Williams' counsel was exceptionally vague. The settlement desired did not state any remedial measures that the grievance panel may implement.

Notwithstanding this, the court has found no case law, statutory authority, or authority in the grievance procedure requiring such specificity as a function of grievability. The authority merely states Ms. Williams had to state a grievable issue in order for the grievance panel to hear this case. *See Jones*, 234 Va. at 625, ("[a]n examination of the City's and the Commonwealth's grievance procedure provisions reveals no mention of a panel's remedial powers.")

At the recent hearing, Ms. Williams, through counsel, was asked what specific remedies she desired. Ms. Williams stated she would like the termination decision reversed, and, as a result thereof, back pay, a restoration of 120 days of Sick Leave Bank benefits, and the health care coverage she was denied. Ms. Williams conceded she would not be able to resume her position with the City of Norfolk. However, Ms. Williams did request reinstatement to her job, so that she may retire or resign from her position.

The Norfolk City's Grievance Procedure states that a grievance panel may choose a "modified remedy." (See the Norfolk City Grievance Procedure Sub-Section (I)(2).) The Virginia Supreme Court states no specific provisions in the Commonwealth's grievance procedure outline the grievance panel's remedial powers. *Jones*, 234 Va. at 625. Only the Department's Rules for the Conduct of Panel Hearings address the specific remedial powers of a grievance panel, and then only in terms of the power to determine an employee's entitlement to "reinstatement and back pay." *Id*. Therefore, according to the Norfolk City's Grievance Procedure and Virginia case law, the grievance panel has authority to issue a "modified remedy" and award "reinstatement and back pay." *Id*.

The Court finds that Ms. Williams seeks reversal of the decision to terminate her City employment and that she be reinstated. Through resolution of the termination issue, reinstatement and the issues of back pay, health care coverage, and Sick Leave Bank benefits can be resolved. *Id*. The grievance panel's authority appears to include resolution of these issues.

## C. *Domain of Panel Does Not Include Damages*

It is well settled that the grievance panel may not award damages or attorney's fees. *Id*. Therefore, Ms. Williams' request for these damages appear to be beyond the grievance panel's authority.

## *Conclusion*

Notwithstanding the vague settlement Ms. Williams requested, the Court finds that Ms. Williams desires a reversal of her termination. Therefore, the Court finds that a grievance panel may weigh the evidence and determine whether Ms. Williams was wrongfully terminated. If so, the grievance panel

may order Ms. Williams' reinstatement, and back pay then may be awarded. Entitlement to health care coverage and Sick Leave Bank benefits also will flow from the panel's decision on termination. The panel's authority does not extend to the request for damages.